## O. O. GOBEN v. STATE.

No. A-821.   Opinion Filed April 18, 1912.

**EVIDENCE—Attacking Prosecutor—Evidence in Rebuttal.** Where the defendant, testifying on his own behalf, voluntarily makes a statement irrelevant to the issue, obviously intended to cast reflection upon the prosecuting officials, evidence is admissible to impeach and refute such statement by cross-examination of the defendant, and by direct evidence to the contrary.

(Syllabus by the Court.)

*Appeal from Comanche County Court;*
*James H. Wolverton, Judge.*

O. O. Goben was convicted of a violation of the prohibition law, and appeals.   Affirmed.

*Al Jennings* and *Stevens & Myers,* for plaintiff in error.

*Smith C. Matson,* Asst. Atty. Gen., and *J. A. Fain,* Co. Atty., for the State.

DOYLE, J.   Plaintiff in error was tried and convicted on an information charging him with an unlawful sale of whisky, on the 21st day of January, 1910.   The testimony is conclusive as to the guilt of the defendant.

The defendant testified on his own behalf, and in his testimony admitted that he was engaged in the unlawful sale of intoxicating liquors as a business in Comanche county prior to January 1, 1910. And that he had a privilege to sell it from the sheriff with the county attorney's consent, for services rendered by him in getting a man by the name of Hammer out of the country, who was going to sue the sheriff and county attorney.

The defendant complains that incompetent, irrelevant and immaterial testimony was admitted over his objection as a part of his cross-examination.

We think that this testimony was properly admitted. The defendant voluntarily made this issue and the county attorney accepted it. To have refused the county attorney the privilege of disproving it by further cross-examination of the defendant would have been rank injustice. The testimony complained of bears directly upon this statement. The defendant testified that at the time this "privilege" was given he was engaged in business on the north side of "C street," next to Cotney's drug store. He offered in evidence a check for $25 dated and paid June 17th, 1909, which he stated was given Hammer in furtherance of his alleged agreement with the sheriff and county attorney to get him out of the country, and that Hammer immediately left. The evidence of the defendant on further cross-examination shows that at the time of this alleged agreement he was not on C street, but was still engaged in business in the Budweiser pool hall on D street, with his brother C. L. Goben and J. B. Sims, during the months of June, July, and a part of August, 1909, and that during this time numerous prosecutions had been filed against him, C. L. Goben and J. B. Sims for selling whisky in the Budweiser pool hall, upstairs and downstairs, and that the building was closed by injunction brought by Mr. Fain, the county attorney. The testimony complained of relates directly to these facts to disprove the defendant's voluntary statement that he had the privilege of selling whisky.

The testimony complained of is in part as follows:

"Q. Your brother C. L. Goben has been found guilty by a jury? A. Yes, sir. Q. Your brother-in-law, J. B. Sims, has been

convicted, has he not, in this court? A. Yes, sir. Q. He had been convicted prior to that time, hadn' he, Doctor? A. Yes, sir. Q. Your brother, C. L. Goben, had been convicted prior to that time, hadn't he? A. Yes, sir. Q. You were a witness for him on that occasion, was you not? A. Yes, sir. I think so. Q. Now, you were doing business upstairs there, and I closed the place of business, didn't I? No answer. Q. You had full protection from the county attorney? How many prosecutions have been filed against you? A. I don't remember."

This testimony followed the further voluntary statement of the defendant that he had the "privilege" to sell whisky, to wit:

"Q. And since you have stopped selling over there you say you haven't sold any whisky to anybody? A. Well, yes, I have sold some. Mr. LeFors said I was the only man who could get in with the fellows in the east end of town, and he said for me to go down in the east end of town and go in partnership with Simpson, and I said, 'You see Fain,' and he said he went to see Fain and Mr. Fain said, 'You go ahead,' and I went in partners with Charlie Simpson and we sold whisky."

This statement of the defendant relating to his "privilege" was voluntary. The state had the right to challenge these voluntary statements on cross-examination. The testimony was competent, relevant and material on this issue raised by the defendant.

The obvious and evident purpose of the defendant was to besmirch the character of the county officials responsible for his prosecution.

It is immaterial to the questions presented, and it would be profitless to review the glaring contradictions and inconsistencies in the testimony of the witnesses for the defense upon this issue. One or two are admittedly ex-convicts. Their perjured statements need no contradiction from witnesses for the state. Suffice it to say that Sheriff LeFors testified that he had no such conversation with the defendant, or with the county attorney, Mr. Fain; that neither he nor the county attorney had ever authorized the defendant to sell whisky, but on the contrary, the county attorney had been prosecuting the defendant Goben, and had been diligently trying to convict him, and that he had instructed the sheriff to catch the defendant whenever he could.

With reference to the alleged agreement wherein the defendant stated that he was privileged to sell whisky if he would get Hammer out of the country, the defendant testified that this agreement and conversation took place in the county attorney's office, in the Keegan building, at a meeting with him there one night, by appointment, the latter part of July.

Mr. Fain, county attorney, testified that the defendant did request a meeting with him by calling him up over the phone one evening after he had gone home; that he had repeatedly declined theretofore to talk with the defendant unless some reputable citizen was present; that on this occasion he consented and immediately called up Under Sheriff Sam Elrod over the phone and requested him to meet him down town. Accordingly they met, and the county attorney requested Elrod to secrete himself against the door to the room where he would place Goben so that he could hear all that was said. Accordingly at the appointed time Elrod was concealed when the defendant came into the room and heard the entire conversation. Both Elrod and the county attorney testified that no such conversation or agreement was had. That Hammer's name·was not mentioned; that they had never heard of Hammer making any complaint against the sheriff or threatening him with suit, but that the real and only subject of conversation was that Goben wanted the privilege of selling "Amber Mead" at the approaching county fair, and that the county attorney positively refused to allow him to do so, and that there was no "Amber Mead" sold and positively no privilege given him to sell any kind of liquor. This conversation was more than a month after the check was given to Hammer. That this man Hammer had pleaded guilty to impersonating an officer in representing himself to be a deputy sheriff of Caddo county, and thereby induced the sheriff, LeFors, to turn over to him a horse thief apprehended in Comanche county on a telegram from the sheriff of Caddo county, and it developed that Hammer was not a deputy sheriff, but was a partner of the horse thief and released him as soon as he got out of town. He served his sentence and never claimed any cause of action against the sheriff.

Further review or comment on the testimony would be profitless. Suffice it to say that the members of this court know Mr. Fain, county attorney of Comanche county, and know him to be a gentleman of unquestionable integrity and ability of the highest order, and his arduous devotion to duty and unparalleled success in the prosecution of criminals commands for him the respect and confidence of the people and of the courts.

The judgment of the county court of Comanche county will be affirmed. Mandate to issue forthwith.

FURMAN, P. J., and ARMSTRONG, J., concur.